UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA SWAGGER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 CV 50020 |
| | ) | Magistrate Judge Iain D. Johnston |
| CAROLYN COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rhonda Swagger brings this action under 42 U.S.C. § 405(g), seeking reversal of the denial of supplemental social security income. As explained below, the case is remanded.

**INTRODUCTION**

The Court understands that some Social Security applicants may not be sympathetic, likeable or even entirely credible. And the Court understands that an Administrative Law Judge might be very reluctant to grant benefits to an applicant who has chronic obstructive pulmonary disorder, like plaintiff here, when that very same applicant smokes a pack of cigarettes a day, just like plaintiff in this case. Nevertheless, Administrative Law Judges must follow the statutory and regulatory requirements when they deny benefits. This is true even when the Court's own independent review of the administrative record reveals many fundamental weaknesses of the applicant's claim. *See Mason v. Colvin*, 13 C 2993 2014 U.S. Dist. LEXIS 152938, *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusions.") (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th 1996)). And this is true even when the Government, on appeal,

tries to salvage the case by highlighting those very same weaknesses that the Court independently located. *See Hanson v. Colvin*, 760 F.3d 759, 762 (7h Cir. 2014) (threatening future sanctions for alleged *Chenery* violations).[1] Benefits cannot be denied simply because an applicant is unsympathetic, unlikeable and not entirely credible. Administrative Law Judges must still follow fundamental statutory, regulatory and case-law requirements, including, but not limited to, complying with the treating physician's rule and building a logical bridge from the record to the decision.

**BACKGROUND**

On February 10, 2010, plaintiff filed her application alleging an onset date of November 25, 2006. The first of two hearings before an administrative law judge ("ALJ") took place on May 19, 2011. Plaintiff testified that she was born in 1964 and was living with her fiancé, a disabled vet. Plaintiff completed school through the eighth grade, dropping out in the ninth grade because she got pregnant. She did not have a driver's license because of a DUI. R. 42-43.

She last worked in 2003, doing plastic injection molding. R. 41. She had not worked in the last eight years because she had problems with her back and hips; had chronic obstructive pulmonary disorder; and had bipolar disorder, anxiety, and chronic depression. R. 42. She has had breathing problems for ten years. She used Advair and Proventil as well as a nebulizer, and was prescribed oxygen in December 2010. R. 45-46. She has a spare that she can take with her. She used it at home every day. R. 46 ("Every day I've got to have it."). Plaintiff smokes a pack

---

[1] Strong arguments can be made that the Seventh Circuit should revisit its entire application of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) in Social Security cases. *See, e.g., Senn v. Astrue*, 2013 U.S. Dist. LEXIS 23794, *18-24 (E.D. Wisc., Feb. 21, 2013) (providing an excellent analysis and request that the Seventh Circuit revisit this jurisprudence); Note, *Taking It On The Chenery: Should the Principles of Chenery I Apply in Social Security Disability Cases?*, 86 Notre Dame L. Rev. 2157 (2011) (questioning the application of the doctrine in Social Security appeals). Obviously, this Court is bound by Seventh Circuit case law and follows that jurisprudence. But this Court echoes Judge Griesbach's request in *Senn*.

of cigarettes a day and has smoked for 30 years. R. 48. The ALJ questioned her extensively about why she did not quit smoking. Plaintiff stated that she had tried, but that it had been difficult after smoking for so many years. She quit using drugs several years ago. R. 51.

According to plaintiff, the following is how she spends a typical day: "Laying down mostly. Head just gets so painful, and then I get out of breath. And I have chest pains. I get dizzy. A lot of my medication makes me dizzy. But I can't stop taking it." R. 43. Her fiancé helped her by doing the cooking and dishes and cleaning. She leaves the house about once a week, and when she does so, she goes to her son's house two blocks away. R. 45.

She had lower back problems and pain in her left hip that pops when she walks and otherwise gives her a "sharp pain" on a daily basis. R. 47. She has pain going down her left leg two to three times a week. Her doctor prescribed Neurontin, which plaintiff had been using since 2004. She can walk a half a block before her back, hips, and breathing cause problems. R. 53, 56. With her cane, she could push herself to maybe walk a block or two. She cannot stand in one spot for very long and has to switch from sitting down to standing every 15 minutes. R. 53.

On July 27, 2011, the first ALJ issued a 7-page opinion finding plaintiff not disabled. Although he found plaintiff had severe impairments of chronic obstructive pulmonary disorder ("COPD"), back disorder, and bilateral hip disorder, he found that her mental impairments were not severe. R. 68. He found that she met no listings and had the residual functional capacity ("RFC") to do light work. He deemed her claim that she needed oxygen every day to lack credibility. He stated that this assertion was "in excess of the medical documentation," but the only example given was that she discharged from Janet Wattles Center in 2009 after having "made significant progress with respect to her stressors" and then, apparently, got no further

treatment. As for treating physicians, the ALJ rejected plaintiff's doctor's opinion[2] that she needed oxygen eight hours a day because the ALJ concluded that this conclusion was "difficult to take into consideration when she is smoking a pack of cigarettes a day and essentially putting smoke into her lungs for about the same length of time that she is needful of oxygen." R. 71. The ALJ rejected Dr. Forrest Riordan's opinion that plaintiff could not work because (among other things) she could not stand or sit for long periods. R. 70. The ALJ noted that Dr. Riordan in one examination found that plaintiff "only demonstrated tenderness along her joints." *Id.* The ALJ also noted that Dr. Riordan did not assess plaintiff's range of motion.

On August 16, 2012, the Appeals Council remanded. The two-page order specifically faulted the ALJ for not evaluating plaintiff's mental health issues and directed the ALJ to obtain a consultative mental status examination. R. 79. The rest of the order contains fairly vague directives, stating that the ALJ should obtain additional evidence concerning both "physical and mental" impairments and should "provide appropriate rationale [for plaintiff's RFC] with specific references to evidence of record." R. 80.

On remand, a new ALJ was assigned as the first one had retired. The new ALJ ordered psychological testing, which was done in November 2012 by psychologist Mark Langgut. He concluded that plaintiff had a dysthymic disorder and a generalized anxiety disorder. R. 704.

On March 26, 2013, the new ALJ conducted a hearing. Plaintiff's counsel introduced new evidence showing recent heart problems (an ejection fraction of 35%, just above listing level, according to counsel). R. 11. Plaintiff answered only a few perfunctory questions. The ALJ then called Dr. Michael Carney, a psychologist, to testify as an impartial medical expert. He testified that plaintiff would not meet the mental health listings under Section 12 because she had only

---

[2] The ALJ did not identify the doctor by name, but according to the exhibit cited, the opinion was by Dr. Baxter, whose testimony is discussed further below.

mild limitations in the paragraph B criteria. The ALJ also asked Dr. Carney about plaintiff's RFC, but he did not offer any opinion, presumably because it would have required him to opine about matters outside his expertise. R. 18-19. No medical expert testified as to plaintiff's physical limitations. Plaintiff's counsel and the ALJ next debated whether a doctor could have diagnosed COPD without pulmonary studies. Eventually, the ALJ agreed to order a pulmonary evaluation after the hearing. A vocational expert ("VE") testified that plaintiff could perform sedentary work (subject to a few minor limitations not at issue here) such as an assembler, office clerk, and sorter. R. 28-29. Plaintiff's counsel asked the VE whether a person who had to "[lie] down periodically because of pain and get up and walk away from their workstations" could work. The VE stated that this would be a problem if it occurred on a "continual basis." R. 30. Plaintiff's counsel asked about use of a cane. The VE stated: "If for ambulating to the workstation, I would say it wouldn't be an issue, because once you're at your workstation, you're going to be seated, performing functions." R. 30-31.

On May 3, 2013, Dr. K. P. Ramchandani evaluated plaintiff for 30 minutes, performing several tests related to plaintiff's pulmonary issues and also to her spinal and osteoarthritis problems. Dr. Ramchandani issued a report (Ex. 24F) and filled out a questionnaire (Ex. 23F). These are discussed further below.

On July 15, 2013, the second ALJ issued his decision. He found that plaintiff did not meet a listing and that she had the RFC to perform sedentary work. Among other findings, the ALJ concluded that plaintiff's need for a cane and oxygen was not medically required as several doctors opined. He found that plaintiff lacked credibility because she continued to smoke. R. 90. The ALJ gave "little weight" to Dr. Ramchandani's opinions and only briefly and indirectly acknowledged Dr. Baxter's opinions, and did not discuss Dr. Riordan's opinions at all.

**DISCUSSION**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Plaintiff raises multiple arguments for remand. They fall into two types, those attacking the ALJ's listing analysis and those attacking the RFC determination.

**I.     Listing Analysis.**

Plaintiff raises two listings arguments, one of which can be addressed quickly. In her opening brief, plaintiff asserted that she met listing 3.02 based on her COPD and obesity. This

argument consisted of only one conclusory sentence, with no analysis. (Dkt. #9 at 6.) After the Government complained about this cursory presentation and then further explained why plaintiff did not meet this listing, the plaintiff never responded in her reply brief. Therefore, the Court finds this argument is forfeited. *See Baker v. Colvin*, 2015 WL 719604, *4 (N.D. Ill. Feb.18, 2015) ("undeveloped" arguments, which rely on "passing references" to legal rules "without providing any substantive support," are deemed waived); *Janusz v. Colvin*, 2015 WL 859497, *4 (N.D. Ill. Feb.26, 2015) (same).

Plaintiff's other listings argument is more persuasive and focuses on the ALJ's explanation for why plaintiff did not meet Listing 1.00. Here is the ALJ's entire "analysis":

> The severity of the claimant's bilateral hip disorder and back disorder do not meet or equal any of the criteria for section 1.00 (musculoskeletal system), because there is no evidence of major dysfunction of a joint, disorder of the spine, or any of the specific neurological deficits required under this section.

R. 87. The explanatory portion of the "analysis" consists of only 25 words following the word "because." As shown below, not only is the "analysis" lacking in detail, it is factually incorrect.

In her opening brief, the plaintiff argued that the ALJ failed to address *any* of the evidence relevant to this issue. Plaintiff first pointed to an October 2011 MRI showing marked disc space narrowing in her cervical spine at C5-C6, resulting in moderate right neural foraminal narrowing. (Dkt. #9 at 7, citing R. 691.) Plaintiff also cited to additional findings supposedly consistent with this MRI, including reduced range of motion in two consultative examinations (R. 452, 729), continual tenderness in her spine (R. 431, 478), muscle spasms (R. 678), and numbness in her shoulders and upper extremities (R. 678). After summarizing this evidence, plaintiff announced in conclusory fashion that this evidence met the requirements of Section 1.04(a).

In its response brief, the Government engaged in what is essentially a salvage operation. To its credit, unlike either the ALJ or plaintiff, the government began by at least quoting the specific requirements of Listing 1.04(a).[3] The Government then argued that plaintiff failed to show that she met these "exact" requirements because she did not exhibit any motor loss. The Government argued that the ALJ's failure to consider the October 2011 MRI was not an error because an ALJ is not required to discuss every piece of evidence and because a May 2013 consultative examination showed that plaintiff was "neurologically intact" with no motor loss. (Dkt. # 14 at 5, citing R. 90, 725-726.)

The Government's arguments are unavailing. First, these arguments are after-the-fact explanations that were not relied on by the ALJ. Therefore, they cannot be considered now by this Court. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). Second, the Government's analysis, though more substantial than the ALJ's, is still incomplete. Although the Government briefly addressed the 2011 MRI, it did not comment on the other evidence cited by plaintiff. The Government, for example, did not address evidence relating to reduced range of motion. *See, e.g.*, *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (analyzing Listing 1.04(a): "Because the only evidence in the record demonstrated significant limitations in Kastner's range of motion, the ALJ's contrary conclusion is peculiar and unexplained. An unarticulated rationale for denying disability benefits generally requires remand."). By only discussing the 2011 MRI, the Government gave the impression that it is the only piece of evidence arguably supporting plaintiff. In finding that a remand is appropriate

---

[3] Given the decision to remand, this Court need not address the merits of whether plaintiff met these requirements. It is sufficient to note that the listing focuses on "nerve root compression" and includes requirements such as a finding of motor loss. (Dkt. #14 at 4.)

based on this argument, this Court is not expressing any opinion on the *strength* of plaintiff's evidence, but is only stating that the ALJ must confront it. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004) ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.").

## II. RFC Analysis.

Plaintiff generally complains that in the RFC analysis the ALJ failed to consider her collective impairments, consisting of spinal and heart problems, osteoarthritis, COPD, obesity, and bipolar disorder. More specifically, plaintiff complains that the ALJ failed to follow the treating physician rule and improperly found she lacked credibility.

### A. The Treating Physician Rule.

The treating physician rule sets forth a hierarchy of medical opinion testimony for treating, examining, and non-examining physicians. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 404.1513. In general, opinions from treating sources are given the most weight. 20 C.F.R. §404.1527(c)(2). Opinions from examining sources are usually given more weight than medical opinions from non-examining sources. 20 C.F.R. §404.1527(c)(1), (e). The key requirement is that the ALJ must explicitly explain what specific weight, if any, all these opinions should be given after explicitly analyzing what the Seventh Circuit refers to as "the checklist" of factors. [4] 20 C.F.R. §404.1527(e); *Larson v. Astrue*, 615 F.3d, 744, 751 (7th Cir. 2010) (referring to the checklist); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (same).

---

[4] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Plaintiff argues that the ALJ did not follow this rule both in assessing the opinions of two of her treating physicians, Dr. Riordan and Dr. Baxter, and also in analyzing the opinion of the consulting physician, Dr. Ramchandani. As summarized in her opening brief, Dr. Riordan wrote several letters opining that plaintiff had limited work capacity. *See* Dkt. # 9 at 9 (citing R. 420, 422, 423, 441). In March 2010, he opined that plaintiff could walk only one block, lift no more than five pounds, and could not sit or stand for longer than 15 minutes at a time. Dr. Baxter stated several times that plaintiff required oxygen for her COPD and heart disease. *Id.* Dr. Ramchandani stated that plaintiff could only occasionally lift up to 10 pounds and could not sit for longer than 15 minutes, stand for longer than 10 minutes, or walk for longer than 10 minutes. *Id.* at 9-10. He also stated that plaintiff's use of a cane was medically required. Plaintiff asserts that to be able to do sedentary work, as the ALJ found, she would have to be seated for six hours in an eight-hour day and that these opinions undermine this conclusion.

The Court agrees with plaintiff that the ALJ did not comply with the treating physician rule. The ALJ did not acknowledge the treating physician rule, nor apply the checklist to any of these doctors. No finding was made, for example, about the length of the treating relationship nor was there any discussion about the degree of specializations. The ALJ did not even acknowledge, much less analyze, Dr. Riordan's opinions.

As for Dr. Baxter's opinions, although the ALJ did not explicitly apply the full checklist, the ALJ at least offered a few reasons for discounting Dr. Baxter's opinion. These arguably could be an implicit application of the third and fourth checklist factors. However, even here, there are unaddressed issues. The ALJ claimed that Dr. Baxter did not indicate in treatment records that plaintiff needed oxygen. R. 90. However, the ALJ did not go beyond this conclusory assertion and cite to the records, something the Government tried to do in its response brief. The

ALJ noted that plaintiff did not mention her need for oxygen in the consultative examinations. But two of these examinations were psychological examinations, and it is therefore not clear whether these interviews called for this information. The ALJ finally noted that pulmonary studies indicated that plaintiff only had "moderate" restriction. Perhaps the ALJ believes that a moderate restriction is inconsistent with a need for oxygen at night, but this point is not obvious to this Court, and the ALJ has not cited to any medical opinion to support it. Neither the ALJ nor this Court can play doctor and decide medical issues.

In its response brief, the Government implicitly recognized these shortcomings and attempted, once again, to shore up the ALJ's explanations. First, as to the complete failure to address Dr. Riordan's opinions, the Government argues that the ALJ intended to incorporate the first ALJ's analysis of Dr. Riordan's opinions based on the inclusion of a generic incorporation provision.[5] Although it is possible that this is what the ALJ intended, the Court cannot be sure that the ALJ actually reviewed and considered Dr. Riordan's opinions, as opposed to simply overlooking them. There is no clear rationale for why the ALJ discussed *some* of the evidence in the second opinion that was *also* included in the first opinion (such as Dr. Baxter's opinions and plaintiff's credibility and the listing analysis under Section 1.00) but then at the same time omitted the information about Dr. Riordan. Moreover, as plaintiff points out, the Appeals Council previously found that the earlier opinion contained errors. Logically then, if the second opinion incorporated the first opinion wholesale, as the Government suggests, then this would raise a question as to whether the earlier errors were carried over into the new opinion. Neither side has cited to any case law on this particular issue. As a practical matter, this Court does not

---

[5] The ALJ stated: "The undersigned incorporates by reference the claimant's allegations and the summary and evaluation of the evidence as documented in the prior hearing decision (3A)." R. 89.

favor such an incorporation approach because it forces this Court to play quilt maker, stitching the two opinions into one. A better practice would be for the ALJ to do this work in the first instance, a practice that also comports with the directive that the ALJ cumulatively assess the evidence. For these reasons, this Court rejects the Government's argument that the ALJ complied with the treating physician rule by piggybacking on the earlier decision.[6]

Second, for both Dr. Riordan's and Dr. Baxter's opinion, the Government has again tried to bolster the ALJ's conclusions by citing to evidence not analyzed by the ALJ. (Dkt. #14 at 7-8.) For instance, the Government quotes from treatment records that state that plaintiff was directed at one point to use oxygen "as needed" and "at night only," thus supposedly undercutting the claim by Dr. Baxter that oxygen was required. However, the ALJ did not analyze this evidence as the Government has done. As for Dr. Riordan's opinions, the Government argues that they conflict with the May 2010 psychological consultative examination showing normal gait. Here again, the Government has at least confronted *some* of the specific evidence. This is something the ALJ did not do but should have done. For the reasons already noted, these post-hoc explanations cannot cure the ALJ's failure to apply the treating physician rule in the first instance.

The Court next considers the ALJ's analysis of the opinions of Dr. Ramchandani, an examining but not a treating physician. As noted above, the ALJ is also required to address his opinions by using the checklist. The ALJ did not do so. Among other things, he did not discuss Dr. Ramchandani's specialization. The ALJ at least discussed Dr. Ramchandani's opinions at some length and explicitly stated what weight ("little weight") he gave to them. However, these explanations are not clear. It is worth noting, preliminarily, that the ALJ did not call *any* medical

---

[6] Even if this approach were accepted, then the Government would have to address the fact that the first ALJ, like the second one, never acknowledged nor explicitly applied the rule.

expert to testify about plaintiff's physical limitations. Thus, the only doctor arguably supporting the ALJ's decision regarding physical impairments is Dr. Ramchandani, but the ALJ gave his opinion little weight. The Government argues that the ALJ properly did so because those opinions were inconsistent with the doctor's own examination notes, which supposedly showed that plaintiff could walk "unassisted for 50 feet" (among other things). But the ALJ never explicitly mentioned this fact in the analysis portion of the opinion. *See* R. 91. Therefore, the Government's rationale is a post-hoc explanation. Moreover, the Government fails to acknowledge that Dr. Ramchandani, while stating that plaintiff could walk 50 feet, also stated that her "gait is slow and measured." R. 90, 725. Neither the ALJ nor the Government confronted this or other contrary evidence such as the fact that Dr. Ramchandani checked "yes" to the questions whether plaintiff "required" the use of a cane and whether a cane was "medically necessary." R. 718.

Rather than confront this evidence, the ALJ stated that Dr. Ramchandani's opinions were based on plaintiff's self-reports which he "seemed" to have "uncritically" accepted. R. 91. The ALJ does not explain what evidence supports the claim that Dr. Ramchandani was uncritical, the suggestion being that he did not take his diagnostic task seriously. The ALJ also stated that there were not the clinical and laboratory abnormalities "*one* would expect if the claimant were in fact as limited as [Dr. Ramchandani] assessed." *Id.* (emphasis added). Yet, the ALJ did not identify what were the abnormalities that "one" (presumably meaning a diagnosing doctor) would "expect." As a result, the ALJ was improperly playing doctor. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (the ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th

Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

In sum, for all the above reasons, the Court finds that the ALJ did not follow the treating physician rule. However, the Court is not suggesting that the ALJ must reach a particular outcome on remand. The evidence supporting plaintiff's claim is mixed and there are legitimate questions that can be raised about the doctors' opinions. In particular, although the parties spent much time analyzing *whether* plaintiff needed to use a case and oxygen, there was less discussion of whether, even if this is true, this would prevent plaintiff from working. The VE at the second hearing briefly touched on this issue as it relates to the cane, but did not give a definitive answer. This issue and others should be considered further on remand.

**B. Credibility Analysis.**

Plaintiff argues that the ALJ's credibility analysis was flawed. An ALJ's credibility determination should be reversed only if it is patently wrong. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). However, an ALJ's decision may be reversed if the ALJ "fail[s] to adequately explain his or her credibility finding by discussing specific reasons supported by the record." *Id.*; *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (a credibility finding "must be specific enough to enable the claimant and a reviewing body to understand the reasoning"). The ALJ found that plaintiff "cannot be considered wholly credible" for two reasons. R. 90. First, the ALJ stated that plaintiff "notably continues to smoke a pack of cigarettes per day, which has been noted to contribute to her shortness of breath (15F), despite admonishments from her doctors to stop smoking." R. 90. Second, the ALJ stated that plaintiff had treatment gaps. R. 91. These explanations are not adequate.

As to the first one, plaintiff relies on *Rousey v. Heckler*, 771 F.2d 1065 (7th Cir. 1985) and argues that it is improper to deny benefits based solely on a claimant's failure to discontinue smoking. In *Rousey*, the plaintiff smoked a half a pack of cigarettes a day and had COPD. *Id.* at 1067. The Seventh Circuit held that it was "improper for the ALJ to make his own determination regarding the prognosis of recovery should Mrs. Rousey stop smoking, when the record was devoid of any evidence that she could return to work if she quit smoking." *Id.* at 1069. No doctor submitted evidence stating that "Mrs. Rousey would be restored to a non-severe condition if she quit smoking her half-pack of cigarettes." *Id.* The Seventh Circuit rejected the government's argument that the effect of smoking on Rousey's COPD was "well documented" and thus essentially self-proving. *Id.* The ALJ still must point to "testimony and medical evidence in the record" to support the conclusion. *Id.* Additionally, the Seventh Circuit noted that none of the medical evidence "linked her chest pain directly to the smoking of cigarettes" and therefore it was not proper for the ALJ "to independently construct that link." *Id.* at 1070.

These holdings are applicable here. As in *Rousey*, the ALJ simply assumed that plaintiff would suffer no limitations if she stopped smoking. Plaintiff has pointed to a May 2003 pulmonary test where she saw no difference in pre- and post-treatment results after using a bronchodilator. Plaintiff believes this evidence shows that stopping smoking would not change matters significantly. The ALJ should address this issue. Moreover, as plaintiff points out, there is no obvious medical link connecting her smoking to her need to use a cane, which plaintiff argues was caused by her spinal problems and her obesity. As for the failure to quit smoking, which both the first and second ALJ placed much weight on, plaintiff stated that she tried to quit smoking but found that the addictive nature of the habit (she had been a smoker for 30 years) made it difficult to do so. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (citing to

- 15 -

*Rousey* and stating that "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful"). In its response brief, the Government never commented on, nor attempted to distinguish *Rousey,* nor suggest it was no longer good law, but instead simply asserted conclusorily that plaintiff's smoking "contributed" to her pulmonary impairments. While this point is possibly true, it does not answer how much it contributed and, specifically, whether plaintiff would still be impaired even if she stopped smoking. Indeed, the government's point makes much sense to the Court. But again, neither the government nor the Court can play doctor. The ALJ has the ability to obtain evidence on this issue and then properly address this point. On remand, the ALJ should do so.

As to the ALJ's second credibility explanation—that plaintiff had treatment gaps—it is wholly conclusory, consisting of this sentence: "The undersigned also notes that the record reflects significant gaps in the claimant's history of treatment." R. 90-91. The ALJ never identified what the treatment gaps were. They are not obvious to this Court. She saw different doctors for different problems. It would be relevant to know, for example, whether the alleged treatment gap related to one specific condition and also how long the gaps were. The first ALJ focused on a gap in the mental health treatment, which does not appear to be one of plaintiff's central claims now. Furthermore, the ALJ never acknowledged that plaintiff indicated that she had difficulty paying for treatment. R.12. As the Seventh Circuit has noted, an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

For the above reasons, the Court finds that a remand is warranted. The Court need not address plaintiff's remaining arguments, such as her claim that the ALJ did not consider her obesity, as these arguments are less significant. However, the ALJ should take a fresh look at all the evidence and arguments on remand.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the decision of the ALJ is remanded for further consideration.

Date: November 4, 2015     By: _____
Iain D. Johnston
United States Magistrate Judge